# UNITED STATES DISTRICT COURT DISTRICT OF MARYLAND

## BALTIMORE DIVISION

**DAMILOLA M. OBEMBE,**

**Plaintiff,**

**v.**

**CAREFIRST MANAGEMENT COMPANY, LLC.**

**Defendant.**

**Case No: GLR 25-CV-1933**

## PLAINTIFF'S ADA-LIMITED SUR-REPLY TO DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS.

### A. INTRODUCTION

Defendant's Reply does not merely rebut Plaintiff's Opposition. It **materially reframes the governing ADA framework** by collapsing distinct ADA theories, timeframes, and procedural postures into a single, consolidated exhaustion narrative that did not appear in Defendant's opening motion. That reframing introduced for the first time in Reply recasts theory-specific, temporally distinct ADA claims as subject to a purported "global exhaustion bar," and further overlays that bar onto post-charge and post-filing conduct. If left uncorrected, the Reply's reframing invites **structural legal error** at the Rule 12 stage by substituting a reply-created exhaustion construct for the governing statutory and doctrinal framework.

See Exhibit 2 (DocuSign Certificate confirming 9-page executed charge with ADA remedy section)

This sur-reply exists for one reason only: **to correct reply-introduced legal distortions before the Court undertakes Rule 12 analysis.** It does not re-argue the Motion for Leave. It does not introduce new claims, new facts, or new evidence. It does not re-brief pleading sufficiency or ask the Court to resolve exhaustion on the merits. Its sole function is to ensure that the Court evaluates Defendant's Motion to Dismiss under the **correct legal framework**, rather than a consolidated exhaustion theory advanced for the first time in Reply.

Specifically, Defendant's Reply introduces three interrelated legal framings not previously presented: (1) a single dispositive exhaustion theory applied across distinct ADA theories and time segments; (2) reliance on informal agency communications to narrow or override the content of an executed, sworn charge; and (3) an improper exhaustion overlay applied to post-charge and post-filing ADA conduct pleaded pursuant to Rule 15(d). The Reply further escalates these framings by accusing Plaintiff of "misrepresenting" her administrative charge, an accusation that depends entirely on Defendant's reliance on an incomplete administrative record.

To orient the Court to the nature of the error before any doctrine is applied, Plaintiff provides the following **analytical matrix**, which demonstrates the categorical separation Defendant's Reply collapses:

## Table 1 — ADA Theories & Exhaustion Scope

| ADA Theory | Timing | Exhaustion Required |
|---|---|---|
| MCCR File to Charge with ADA Remedy section (Charge) | Oct. 2024 | Yes (Satisfied) |
| Failure to Accommodate | Jan27 -Jun 2025 | Yes (Satisfied) |
| Failure to Engage in ADA interactive process | Jan–June 2025 | No |
| ADA Retaliation (pre-filing) | Mar-Jun 2025 | No (post-charge, reasonably related) |
| ADA Interference (pre-filing) | Mar-Jun 2025 | No(post-charge, reasonably related) |
| ADA Retaliation (post-filing) | Aug 6-Sept 24, 2025 | No (Rule 15(d) supplementation) |
| ADA Coercion-Interference(Post-Charge, Pre-Filing) | Aug–Sept 2025 | No(Rule 15(d) supplementation) |

This table is a schematic presented solely to illustrate the categorical legal distinctions between theories and timeframes that Defendant's Reply erroneously collapses. Its purpose is to clarify the legal framing error for the Court's review, not to adjudicate facts.

It is a **framing device** that illustrates the legal error introduced in Reply: the treatment of distinct ADA theories and timeframes as subject to a single exhaustion disposition. The sections

that follow correct that error in a reply-limited, record-controlled manner so that Rule 12 review proceeds on legally sound ground.

## B. SCOPE & POSTURE OF THIS SUR-REPLY

This sur-reply is submitted pursuant to the Court's authority to permit responses to **new matters raised for the first time in a reply brief**, where correction is necessary to prevent prejudice and legal error. Defendant's Reply introduces new legal framings and record characterizations that were not advanced in the opening motion and to which Plaintiff had no prior opportunity to respond. A sur-reply is therefore the appropriate and proportional procedural vehicle.

The scope of this sur-reply is **strictly confined** to reply-introduced issues. It addresses only:

(a) the consolidated exhaustion framework first advanced in Reply;

(b) the Reply's reliance on informal agency communications to override or narrow an executed charge;

(c) the improper extension of exhaustion requirements to post-charge and post-filing ADA conduct; and

(d) the Reply's reliance on extra-charge agency communications to argue for a narrowing of the Plaintiff's sworn, executed charge, an argument that improperly seeks to create a factual dispute about the charge's scope where none exists at the pleading stage.

This sur-reply does **not** re-argue the merits of Defendant's Motion to Dismiss. It does **not** supplement the pleadings. It does **not** introduce new claims, new factual allegations, or new

evidentiary material. It does **not** ask the Court to resolve disputed facts regarding exhaustion. Instead, it performs a narrower and necessary function: **to prevent the Court from applying an incorrect legal framework created by reply-only argument.**

Absent correction, Defendant's Reply would permit dispositive analysis to proceed on a legal theory never tested in the opening brief and never addressed by Plaintiff precisely the circumstance for which limited sur-reply practice exists. The sections that follow therefore address only the reply-introduced framings identified above and nothing more.

## C. GOVERNING LEGAL FRAMEWORK

### I. Statutory Architecture Governing ADA Enforcement

The Americans with Disabilities Act is enforced through the remedial and procedural framework of Title VII. 42 U.S.C. § 12117(a). As a result, exhaustion under the ADA is governed by Title VII's notice-based administrative scheme, not by judicially-created technical pleading traps. The statute's structure reflects Congress's intent that administrative filings function as a gateway for notice and conciliation—not as a merits adjudication of future judicial claims.

Defendant's Reply improperly treats the administrative process as a merits-screening mechanism by collapsing distinct ADA theories and timeframes into a single exhaustion disposition. That approach is incompatible with the statutory architecture incorporated through § 12117(a), which prioritizes employer notice and agency engagement over technical precision.

## II. Exhaustion as Notice Doctrine

The Supreme Court has made clear that charge-filing requirements are not jurisdictional and must not be applied in a manner that defeats substantive statutory rights through technicality. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). The Fourth Circuit has repeatedly emphasized that exhaustion doctrines exist to ensure notice, not to erect procedural tripwires for employees navigating an administrative process without counsel.

Defendant's Reply advances a consolidated exhaustion theory that operates as a technical bar, one that would extinguish ADA claims despite documented notice through a sworn charge. This framing inverts the purpose of exhaustion and improperly invites dismissal based on formalistic parsing rather than statutory function.

## III. Liberal Construction of Administrative Filings and Protection of Statutory Remedies

Administrative filings under the ADA and Title VII are construed liberally to protect employee rights and preserve statutory remedies. Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402–03 (2008). Courts may not require administrative submissions to read like "a detailed essay" or a judicial pleading; substance controls over labels and formatting.

The Fourth Circuit has reinforced this principle, holding that courts must focus on whether the employer was put on notice of the alleged discrimination and the nature of the dispute. Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594–96 (4th Cir. 2012).

Defendant's Reply attempts to narrow Plaintiff's ADA claims by elevating informal agency communications and intake materials over the executed charge itself. That approach is

inconsistent with Holowecki and Sydnor because it elevates preliminary agency communications over the executed charge that provides statutory notice.

## IV. Executed Charges Control the Scope of Administrative Proceedings

For exhaustion and scope analysis, the executed administrative charge as signed, sworn, and submitted by the charging party constitutes the controlling administrative document. Preliminary intake questionnaires, informal agency communications, internal processing notes, or staff correspondence do not amend, override, or narrow the content of a sworn charge;Authenticated DocuSign certificate establishes that the executed charge contains ADA remedy language; informal agency communications reflecting incomplete versions cannot override the authenticated original.

The legal effect of the administrative process is determined by the charge itself, not by subsequent agency happenstance or incomplete records. This principle is grounded in the statutory requirement that charges be "in writing under oath or affirmation" and that they provide the foundation for administrative and judicial proceedings. 42 U.S.C. § 2000e-5(b).*

Defendant's Reply attempts to reconstruct Plaintiff's allegations using informal agency materials rather than the executed charge. That approach disregards the foundational principle that the sworn charge controls the scope of administrative and judicial proceedings.

## V. Scope of Judicial Claims: "Reasonably Related" and Expected‐Investigation Doctrine

Judicial claims are not confined to the precise wording of an administrative charge; they may extend to any claims that are reasonably related to the charge and would be expected to arise

from a reasonable administrative investigation. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247–48 (4th Cir. 2000); Chisholm v. U.S. Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981).

By treating each ADA theory as requiring independent, granular exhaustion regardless of temporal and factual continuity, Defendant's Reply disregards the Fourth Circuit's governing scope doctrine. The Reply's framing invites the Court to adopt a narrower exhaustion rule than controlling precedent permits.

**VI. Theory-Specific and Time-Bound Nature of Exhaustion Analysis**

Exhaustion under the ADA is not a monolithic, one-time event but a theory-specific and time-bound inquiry. Courts must evaluate each distinct ADA theory—failure to accommodate, retaliation, interference separately for exhaustion purposes, and must apply different exhaustion principles to conduct occurring in different temporal segments (pre-charge, post-charge, post-filing). See Jones v. Calvert Grp., Ltd., 551 F.3d 297, 304-05 (4th Cir. 2009) (analyzing retaliation separately from discrimination claims); Young v. City of Mount Ranier, 238 F.3d 567, 574 (4th Cir. 2001) (applying different standards to different ADA theories).This doctrinal structure prevents the improper consolidation of distinct legal theories into a single exhaustion disposition.

Defendant's Reply advances a consolidated exhaustion theory that collapses distinct ADA theories and timeframes. That approach is incompatible with the theory-specific and time-bound framework that governs ADA exhaustion analysis.

**VII. ADA Accommodation and Interactive Process Obligations**

Once an employer has notice of a disability and the need for accommodation, the ADA imposes a duty to engage in an interactive process in good faith. EEOC v. Fed. Express Corp., 513 F.3d 360, 369–70 (4th Cir. 2008); Wilson v. Dollar Gen. Corp., 717 F.3d 337, 346–47 (4th Cir. 2013).

Defendant's Reply attempts to confine accommodation claims by recharacterizing the charge's scope, which would undermine the ADA's interactive process doctrine that flows from notice. That effort ignores that accommodation duties and failures to engage are triggered by notice and ongoing conduct, not by static administrative phrasing.

**VIII. Post‑Charge and Post‑Filing ADA Violations Are Not Subject to Serial Exhaustion**

The Fourth Circuit has long held that post‑charge retaliation and related discriminatory acts need not be separately exhausted. Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 304 (4th Cir. 2009). Rule 15(d) expressly authorizes supplementation to address post‑filing events. Fed. R. Civ. P. 15(d); Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002).

Defendant's Reply overlays exhaustion requirements onto post‑charge and post‑filing ADA conduct an approach directly foreclosed by Nealon, Jones, and Rule 15(d). This misapplication risks dismissing claims that, as a matter of law, are not subject to pre‑charge exhaustion.

**IX. Retaliation Claims Are Not Constrained by Formal Symmetry**

Retaliation and related ADA claims need not mirror the precise language or legal theories articulated in the administrative charge. So long as such claims are reasonably related to the

charge allegations and arise from the same factual nucleus, they fall within the scope of exhaustion, seeNealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992) (retaliation claims "grow out of" the original charge).

Defendant's Reply improperly demands formal symmetry between charge language and retaliation claims, a requirement that would defeat the protective purpose of anti-retaliation provisions.

## X. Accusations of Misrepresentation Are Governed by the Executed Record

Where discrepancies exist between an executed administrative charge and agency records, the sworn charge controls. Processing errors, agency service mistakes, incomplete record production, or internal agency communications cannot redefine the charging party's allegations or support accusations of misrepresentation. The charging party is entitled to rely on the final, executed document submitted to the agency.

Defendant's Reply improperly relies on incomplete agency records to accuse Plaintiff of misrepresenting her charge, an approach that contradicts the primacy of executed documents and would penalize Plaintiff for agency processing variations.

## XI. Rule 12 Constraints and Record Hierarchy

At the motion-to-dismiss stage, courts accept well-pleaded allegations as true and may not resolve factual disputes or weigh competing administrative records. Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Sworn, executed charges control over informal or incomplete administrative materials.

Defendant's Reply relies on informal agency communications and partial records rather than the authenticated charge, a methodology that conflicts with Rule 12's constraint against resolving factual disputes at this stage. Such an approach exceeds Rule 12's limits and undermines the hierarchy of administrative records recognized by governing law.

## XII. Remedial Construction Canon

The ADA is a remedial statute and must be construed broadly to effectuate its purposes. Tcherepnin v. Knight, 389 U.S. 332, 336 (1967).

Defendant's Reply advances a restrictive interpretation of exhaustion and administrative scope that would narrow ADA protections through procedural artifice. That approach conflicts with the remedial construction canon that governs ADA enforcement.

## D. REPLY-INTRODUCED LEGAL ERRORS AND DOCTRINAL CORRECTION

## PILLAR 1-ADA EXHAUSTION MISCHARACTERIZATION: DEFENDANT'S IMPROPER CONSOLIDATED "GLOBAL BAR.

Defendant's Reply does not merely rebut Plaintiff's Opposition. It materially reframes the governing ADA framework by collapsing distinct ADA theories, time periods, and procedural postures into a single consolidated exhaustion narrative not presented in Defendant's opening brief. That consolidated narrative functions as a "global bar" by treating any perceived defect in one administrative artifact as dispositive across all ADA theories and across post-charge and post-filing conduct.

The Fourth Circuit's "scope" doctrine evaluates whether the judicial claims fall within the charge's reasonable reach, not whether the complainant used perfect labels at intake. See Chacko v. Patuxent Inst., 429 F.3d 505 (4th Cir. 2005) (limiting scope where a plaintiff shifts timeframes/actors/conduct into a different case); Jones v. Calvert Grp., Ltd., 551 F.3d 297 (4th Cir. 2009) (scope is determined by the charge's contents).

That doctrine does not authorize an employer to convert the charge into a single "global exhaustion bar" that collapses distinct ADA theories and distinct procedural postures into one dispositive framing.

**PILLAR 2 - DOCUSIGN AUTHENTICATION & CHARGE CONTENT CONTROL: EXECUTED CHARGE AND REMEDY SELECTIONS GOVERN**

Defendant's Reply relies on a version of the administrative charge that Plaintiff has shown through DocuSign chain-of-custody materials to be incomplete or truncated. Defendant then treats omissions in that downstream copy as proof that ADA remedy language was "absent" from the executed charge.

Plaintiff's executed charge was completed via DocuSign, and the record contains:

1. DocuSign Certificate of Completion confirming completion time and process;

2. DocuSign Envelope History confirming the event log;

3. The executed, signed charge comprising pages 1–9.

Where there are competing "versions" of what Defendant claims was served versus what Plaintiff executed, the DocuSign envelope record resolves the dispute:

- It identifies the executed document set.

- It establishes completion timing.

- It establishes the integrity of the executed packet.

Under Federal Rule of Evidence 1002, the executed, authenticated charge constitutes the 'original' for best evidence purposes. Defendant's reliance on a non-original, truncated copy to dispute the charge's content is precluded by the best evidence rule under Federal Rule of Evidence 1002, which requires the original or a duplicate of the executed charge to prove its contents.

**PILLAR 3 - EEOC / MCCR EMAIL MISUSE: INFORMAL STAFF COMMUNICATIONS DO NOT AMEND OR NARROW A SWORN CHARGE**

Defendant's Reply relies on an informal EEOC/MCCR email exchange to suggest administrative narrowing, mischaracterization, or Plaintiff inconsistency. That reliance is legally improper.

Elevating informal agency communications over the executed charge contradicts the command of Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402-03 (2008), to construe administrative filings liberally and, under Zipes v. Trans World Airlines, 455 U.S. 385, 393 (1982), improperly uses a procedural technicality to attempt to defeat substantive ADA claims.

An informal staff email is not an amendment to the charge. It is not a determination. It is not an executed document. It cannot override a sworn, authenticated charge with remedy selections.

**PILLAR 4 - POST-CHARGE / POST-FILING ADA CONDUCT: NO PRE-CHARGE EXHAUSTION OVERLAY FOR LATER-ARISING ADA VIOLATIONS**

Defendant's Reply applies a single dispositive exhaustion theory across distinct ADA theories and time segments, including post-charge and post-filing ADA conduct. It overlays pre-charge exhaustion onto later-arising violations that, by doctrine, are analyzed separately.

Rule 15(d) permits supplementation to address events occurring after the original pleading. Defendant's Reply's exhaustion overlay attempts to erase Rule 15(d)'s procedural function and impose a bar that does not exist in the doctrine. Imposing an exhaustion requirement on post-charge conduct is directly foreclosed by Nealon v. Stone, 958 F.2d at 590, and the mechanism for pleading post-filing events is expressly provided by Rule 15(d)

**PILLAR 5 - "MISREPRESENTATION" ACCUSATION: RECORD-COMPARISON AND AUTHENTICATION DEFEAT THE CHARGE-OMISSION NARRATIVE**

Defendant's Reply accuses Plaintiff of "misrepresenting" her charge by citing ADA remedy language Defendant claims is "absent." That accusation is premised on Defendant's reliance on an incomplete charge copy. The accusation of misrepresentation, derived from comparing the pleadings to a non-original agency copy, fails under Federal Rule of Evidence 1002, as the contents of the charge are determined by the authenticated original document.

Plaintiff quoted and relied upon the executed charge; any discrepancy arises from downstream transmission/service, not from Plaintiff conduct.

Under Federal Rule of Evidence 1002, the executed, authenticated charge constitutes the 'original' for best evidence purposes. Defendant's reliance on a truncated service copy violates this foundational evidentiary principle.

**E. CONTROLLING RECORD: ANALYTICAL FRAMEWORK-Exhibit Integration & Record Control**

Plaintiff incorporates Exhibit 4i&ii (ADA Claim Classification & Exhaustion Matrix) as record-control clarification, delineating by ADA theory and timeframe the exhaustion scope, the administrative record anchor, and the reply-introduced consolidation error addressed in Sections B -E.

**Plaintiff incorporates Exhibit 2 (DocuSign Charge pages 1-9**; DocuSign Envelope History; DocuSign Certificate of Completion; and associated metadata) as the controlling administrative record for exhaustion analysis and for rebuttal of Defendant's reply-introduced "absence" and "misrepresentation" assertions.

**F. CONCLUSION**

Defendant's Reply introduces a consolidated ADA exhaustion framing that collapses distinct ADA theories, timeframes, and procedural postures into a single dispositive narrative. That framing misstates the governing law and misuses informal administrative materials to contradict an authenticated executed charge.

Under the controlling statutes and doctrines set forth in Section I—including 42 U.S.C. § 12117(a), Holowecki, Zipes, Sydnor, Smith, Nealon, and Chisholm—the Reply's consolidated exhaustion bar, its reliance on informal staff communications over executed charge documents, and its misrepresentation accusation premised on a truncated copy are legally impermissible. The Court should evaluate the Motion to Dismiss on an accurate doctrinal and record-controlled

foundation, using the executed charge and remedy selections as controlling and rejecting the Reply's consolidation errors.

**Respectfully submitted,**

/s/ **Damilola M. Obembe**

Plaintiff Pro Se

7661 Arundel Mills Blvd #1158  Hanover, MD 21076

(410) 705-4571

obembefederalcase@gmail.com

Dated: January 5, 2026.

11/3/2026

## CERTIFICATE OF SERVICE

I hereby certify that on January 5,2026, a true and correct copy of the foregoing Plaintiff's ADA-Limited Sur-Reply to Defendant's Reply in Support of Motion to Dismiss was served via the Court's CM/ECF system upon all counsel of record.

**Plaintiff's Evidence List** *(Referenced in Plaintiff's ADA-Limited Sur-Reply)*

**EXHIBIT 1** — Plaintiff's ADA-Limited Sur-Reply

**EXHIBIT 2** — Executed Administrative Charge (Complete, 9 Pages)

**EXHIBIT 3** — DocuSign Authentication Materials

**EXHIBIT 4** — TABLE 2 & 3 -  FULL ADA MATRIX (EXHIBIT 4i-ii) ii. ADA Remedy Traceability Materials

**Donald E. English, Jr.  & Glass, Doriyon C**

Morgan, Lewis & Bockius LLP

1111 Pennsylvania Avenue NW

Washington, DC 20004

**Email: donald.english@morganlewis.com ; Email: doriyon.glass@morganlewis.com**

Respectfully submitted,

**/s/ Damilola M. Obembe**

**Damilola M. Obembe**

Pro Se Plaintiff

7661 Arundel Mills Blvd. #1158

Hanover, MD 21076

Email: obembefederalcase@gmail.com Phone: (410) 705-4571

1/3/2026