IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAMILOLA M. OBEMBE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-25-1933 |
| CAREFIRST MANAGEMENT COMPANY, LLC, | * | |
| | * | |
| Defendant. | | |

***

**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant CareFirst Management Company,

LLC's ("CareFirst") Motion to Dismiss (ECF No. 44). The Motion is ripe for disposition,

and no hearing is necessary. See Local Rule 105.6 (D.Md. 2025). For the reasons outlined

below, the Court will grant CareFirst's Motion in part and deny it in part.[1]

---

[1] Also pending before the Court is self-represented Plaintiff Damilola M. Obembe's Motion to Strike Improper Portions of Defendant's Reply (ECF No. 61). The Court will deny the Motion on the grounds cited by CareFirst, namely that Obembe "seeks to excise core portions of CareFirst's Reply Brief that do exactly what a reply is supposed to do: respond to new assertions and materials first advanced in [Obembe's] Opposition, and to elaborate on arguments preserved in CareFirst's Motion to Dismiss based on the way [Obembe] framed her Opposition." (Def.'s Opp'n Mot. Strike at 1, ECF No. 62). Because the Court finds CareFirst's Reply (ECF No. 59) permissible and in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules, Obembe's Motion to Strike will be denied.

## I.   BACKGROUND

### A.   <u>Factual Background</u>[2]

Self-represented Plaintiff Damilola M. Obembe is a "lawful permanent resident of the United States, born in Nigeria and of Nigerian national origin and Black African racial identity." (2d Am. Compl. ¶ 20, ECF No. 37). Obembe holds multiple Salesforce certifications and advanced degrees. (<u>Id.</u> ¶ 41). Defendant CareFirst Management Company, LLC ("CareFirst") is a non-profit health insurer based in Baltimore, Maryland, with operations throughout the District of Columbia, Maryland, and Northern Virginia. (<u>Id.</u> ¶ 22).

On or about March 25, 2024, after interviewing with Tupakula Balakrishna and Manager Renea Joseph, Obembe began working for CareFirst as a Lead Business Analyst "to support the Salesforce Health Cloud V12 implementation." (<u>Id.</u> ¶ 41). Within a few months of starting her new job, on or about May 30, 2024, Obembe's initial manager, Joseph, transitioned from CareFirst and the company reassigned Obembe to Director Sandra Santos and Manager Charlene Allen. (<u>Id.</u> ¶ 44). Upon reassignment, Obembe alleges that her new supervisors removed her from meetings, denied her access to work assignments, and shifted her role to administrative support. (<u>Id.</u> ¶¶ 44–45). Obembe further alleges that CareFirst management ignored her requests for reinstatement of her prior

---

[2] Unless otherwise noted, the Court takes the following facts from the Second Amended Complaint (ECF No. 37) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

role—except during Balakrishna's absence in August 2024, where Obembe was briefly assigned a technical work task. (Id. ¶¶ 52, 54).

On June 6, 2024, Obembe "explained [in] a 26-person meeting that her access profile was restricted and requested System Administrator rights." (Id. ¶ 47). According to Obembe this "good-faith explanation" was misconstrued as insubordination. (Id.). And as a result, on June 25, 2024, Obembe's manager, Allen, "placed a formal insubordination accusation in [her] personnel file." (Id. ¶ 48). That same day, Obembe suffered a hypertensive crisis that required emergency hospitalization. (Id. ¶ 50).

On or about July 1, 2024, Obembe submitted an internal complaint with CareFirst's Human Resources Department ("HR"), requesting an internal investigation into "ongoing discrimination and unlawful harassment." (Id. ¶ 55). A little over a month later, on August 6, 2024, Obembe alleges that during a meeting with HR and Director Santos, she was told to "stay in [her] lane," that she was "too aggressive," and that she should "prove herself like [Balakrishna]" and "respect her seniors." (Id. ¶¶ 53, 60).

On September 27, 2024, HR closed its investigation, finding no wrongdoing had occurred. (Id. ¶ 61). After filing a dual charge with the Maryland Commission on Civil Rights ("MCCR") and the Equal Employment Opportunity Commission ("EEOC") on October 25, 2024 (id. ¶ 33), Obembe alleges that CareFirst removed her from further projects and core project communications on or around November 12, 2024 (id. ¶¶ 66–67). According to Obembe, the timing of these actions coincided with CareFirst's receipt of notice of her MCCR Charge. (Id. ¶ 68).

Obembe maintains that she was systematically excluded from all technical assignments while her "Indian-national colleagues, including Balakrishna, continued to receive privileged access [to technical work assignments]." (Id. ¶ 46). Specifically, Obembe alleges that CareFirst elevated Yamini Rejeti, a "South Asian/Indian recent graduate with no Salesforce certifications" to technical assignments "without delay or vetting." (Id. ¶ 69). Obembe asserts that she, Balakrishna, and Rejeti were governed by the same policies and workflows, and reported to the same manager, Allen, with Director Santos as the next level decisionmaker. (Id. ¶ 70).

In January 2025, Obembe formally requested reassignment as a reasonable accommodation under the ADA, citing "worsening psychiatric and cardiovascular symptoms." (Id. ¶ 72). Despite receiving medical letters from Obembe's physiotherapist and psychiatrist recommending immediate reassignment, CareFirst "dismissed her request, stating reassignment was 'not in the business's interest.'" (Id. ¶¶ 73–74).

About a month later, on February 28, 2025, Obembe received a negative annual performance evaluation, criticizing her technical knowledge and turnaround time. (Id. at 18–19). This evaluation reduced Obembe's bonus and diminished her eligibility for promotions and salary increases. (Id. ¶ 76).

**B.    Procedural History**

On October 25, 2024, Obembe filed a Charge of Discrimination against CareFirst with the MCCR and EEOC,[3] alleging discrimination based on her race and national origin. (See MCCR Charge at 5, ECF No. 28-3;[4] 2d Am. Compl. ¶ 33).[5] The EEOC issued a Notice of Right to Sue Letter on May 28, 2025. (2d Am. Compl. ¶ 35). Obembe initiated this action on June 17, 2025. (ECF No. 1). Her Second Amended Complaint, filed on September 25, 2025, alleges disparate treatment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII") (Count I), hostile work environment under Title VII (Count II), retaliation under Title VII and the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA") (Counts III and IV), failure to accommodate disability under the ADA (Count IV), and disparate impact under Title VII

---

[3] Charges of Discrimination filed with the MCCR are automatically cross-filed and sent to the EEOC for dual or cross-filing purposes. Bolden v. CAEI, Inc., No. JRR-21-2295, 2023 WL 5938605, at *3 n.6 (D.Md. Sep. 12, 2023).

[4] Unless otherwise noted, citations to the record refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[5] Ordinarily, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). However, a Court may consider documents referred to and relied upon in the complaint "even if the documents are not attached as exhibits," so long as the documents are integral to the complaint and neither party disputes its authenticity. Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Here, there is no dispute that documents relating to the administrative record are integral to this case and authentic. See White v. Mortg. Dynamics, Inc., 528 F.Supp.2d 576, 579 (D.Md. 2007) (finding that documents from the administrative record were integral to plaintiff's complaint). Accordingly, the Court will consider Obembe's MCCR Charge of Discrimination in its analysis.

(Count V). (2d Am. Compl. ¶¶ 82–152). Obembe seeks declaratory, injunctive, and monetary relief, as well as attorneys' fees and costs. (Id. at 41–42).

On October 15, 2025, CareFirst filed a Motion to Dismiss. (ECF No. 44). Obembe filed a Motion for Leave to File a Supplemental Pleading on October 20, 2025 (ECF No. 46), which the Court granted as unopposed on November 5, 2025 (ECF No. 48). On November 5, 2025, Obembe opposed CareFirst's Motion to Dismiss (ECF No. 52), and CareFirst filed its Reply on December 5, 2025 (ECF No. 59). On December 12, 2025, Obembe moved to strike certain portions of CareFirst's Reply (ECF No. 61), and CareFirst filed an Opposition on December 26, 2025 (ECF No. 62). On January 5, 2026, Obembe filed a Motion for Leave to File ADA-Limited Surreply (ECF No. 64), which the Court granted on March 4, 2026 (ECF No. 69).

## II.   DISCUSSION

### A.   Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6

defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. See Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979) (finding dismissal of complaint proper because plaintiffs' "conclusory allegations" of discrimination were unsupported by "reference to particular acts, practices, or policies"), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.    Analysis**

CareFirst asserts Obembe's Second Amended Complaint must be dismissed because: (1) Obembe fails to state a claim of disparate treatment or hostile work environment under Title VII (Counts I & II); and (2) Obembe failed to properly exhaust her administrative remedies as to her Title VII retaliation and disparate impact claims

(Counts III & V) and ADA claim (Count IV). (Mem. L. Supp. Mot. Dismiss Pl.'s 2d Am. Compl. ["Mot."] at 3, ECF No. 44-1). At bottom, the Court will grant CareFirst's Motion to Dismiss Counts I, II, IV, and V, and will deny the Motion as to Count III.

### 1.      Exhaustion of Administrative Remedies

Before filing suit in a Title VII or ADA case, a plaintiff must exhaust administrative remedies. Campbell v. Becton, Dickson & Co., No. ELH-22-3043, 2024 WL 1299354, at *21, 21 n.12 (D.Md. Mar. 27, 2024) (citing Bush v. Frederick Cnty Pub. Schs., No. 23-1127, 2024 WL 639255, at *3 (4th Cir. Feb. 14, 2024)); Hines v. Mayor & City Council of Balt., No. SAG-22-1243, 2024 WL 4695838, at *6 n.4 (D.Md. Nov. 6, 2024), aff'd sub nom., Hines v. Mayor & City Council of Balt. City, No. 24-2208, 2025 WL 3764222 (4th Cir. Dec. 30, 2025). Exhaustion "ensures that [an] employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005). Although exhaustion is not jurisdictional, it "limits the scope of a plaintiff's federal lawsuit to those parties and claims named in the administrative charge." Campbell, 2024 WL 1299354, at *21.

Generally, when a plaintiff's complaint alleges a violation on a basis not alleged in the administrative charge (i.e., race or sex), courts will dismiss the claim for failure to exhaust. See, e.g., Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132–33 (4th Cir. 2002) (plaintiff failed to exhaust claim for sex discrimination because EEOC Charge alleged only racial discrimination); Jones v. Calvert Grp., Ltd., 551 F.3d 297, 301 (4th Cir. 2009) (plaintiff failed to exhaust claim for racial discrimination because EEOC Charge alleged only retaliation).

That said, an EEOC charge does not strictly limit the lawsuit that may follow, so long as plaintiff's claims match the discriminatory bases and kinds of liability alleged in the administrative charge. See Burnett v. Aldi, Inc. Md., No. JRR-23-376, 2024 WL 51129, at *7 (D.Md. Jan. 4, 2024). For example, where both the charge and formal complaint concerned discrimination in promotion but involved different aspects of the promotional system, courts have found exhaustion satisfied. See Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012).

Here, the Court finds that Obembe failed to exhaust her administrative remedies as to her ADA claim (Count IV). First, Obembe's MCCR Charge contains no reference to any disability or health concerns that would put CareFirst on notice of her claim for failure to accommodate a disability claim and retaliation on the basis of disability. (See generally MCCR Charge). Further, the Court is not persuaded by Obembe's allegation that she amended her Charge through an email to the Commission because the email itself makes no reference to amending her complaint or including additional claims. (See 2d Am.

Compl. ¶ 4; Mar. 3, 2025 Email, ECF No. 33-5).[6] On these grounds, the Court will dismiss Count IV for failure to exhaust administrative remedies.[7]

CareFirst also contends that Obembe failed to exhaust her administrative remedies as to her disparate impact claim on the basis of national origin (Count V). (Mot. at 11). In her Opposition to CareFirst's Motion, Obembe did not address Count V, nor respond to CareFirst's arguments as to her disparate impact claim. (See generally Pl.'s Opp'n Mot. Dismiss ["Opp'n"], ECF No. 52). Consequently, Obembe abandons her disparate impact claim, and because the Court finds CareFirst's argument meritorious, Count V will be dismissed. See Ferdinand-Davenport v. Child.'s Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010) (plaintiff abandoned her claim when she failed to respond to the defendant's

---

[6] Because Obembe relies on the March 3, 2025 email to allege that she amended her MCCR Charge, it is integral to her Complaint as it directly bears on the issue of exhaustion. See, e.g., Iwebo v. Sheppard Pratt Health Sys., Inc., No. BPG-19-3008, 2020 WL 4748579, at *3 (D.Md. Aug. 14, 2020) (noting that "two emails and the EEOC charge are integral to the Complaint because plaintiff explicitly relies on these emails and the EEOC charge in her allegations"). Further, neither party disputes its authenticity. See Fare Deals Ltd., 180 F.Supp.2d at 683; accord New Beckley Mining Corp., 18 F.3d at 1164. As such, the Court will consider the March 3, 2025 email in its analysis.

[7] To avoid this result, Obembe argues in her Opposition that CareFirst's "post-charge conduct" formed the basis of her ADA claim. (Pl.'s Opp'n Mot. Dismiss at 15, ECF No. 52). This argument also fails. Obembe alleges nothing to suggest that between October 25, 2024, the date she filed her MCCR Charge, and June 17, 2025, the date she initiated this action, she lacked an opportunity either to amend her Charge or file a new charge, prior to filing the instant lawsuit. (See generally 2d Am. Compl.). The United States Court of Appeals for the Fourth Circuit has found that a failure to amend a charge of discrimination constitutes a failure to exhaust administrative remedies. See Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 149 (4th Cir. 1999) (plaintiff who took no official action to amend the charge of discrimination failed to exhaust administrative remedies with respect to claim omitted from the original charge). Obembe's Opposition does not disturb this result.

argument in dispositive motion). Accordingly, the Court will grant CareFirst's Motion to Dismiss Counts IV and V.

### 2.    Count I

Next, CareFirst moves to dismiss Obembe's Title VII disparate treatment claim (Count I) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Mot. at 3). Title VII of the Civil Rights Act prohibits status-based discrimination based on an employee's protected characteristics such as "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 346–47 (2013); Strothers v. City of Laurel, 895 F.3d 317, 326–27 (4th Cir. 2018). A plaintiff can state a claim for disparate treatment on the basis of race or national origin by either direct evidence or through the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Haynes v. Waste Connections, Inc., 922 F.3d 219, 223 (4th Cir. 2019); see also Wannamaker-Amos v. Purem Novi, Inc., 126 F.4th 244, 255 (4th Cir. 2025).

Here, Obembe appears to allege her claim under the McDonnell Douglas framework, which requires: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) disparate treatment as compared to similarly situated employees" outside the protected class. Webb v. Potomac Elec. Power Co., No. TDC-18-3303, 2020 WL 1083402, at *4 (D.Md. Mar. 6, 2020) (citing Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)). Although a plaintiff need not "plead facts establishing a prima facie case of discrimination to survive a motion to

dismiss," a plaintiff must nevertheless "state a plausible claim for relief." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015).

Moreover, when a plaintiff bases her disparate treatment allegations entirely upon a comparison to an employee from a non-protected class, she must demonstrate that the comparator was similarly situated in all relevant respects. Johnson v. Balt. City, 163 F.4th 808, 818 (4th Cir. 2026). While there is no bright-line rule for what makes employees similarly situated under Title VII, courts frequently consider whether the individuals: (1) held the same job descriptions and responsibilities; (2) were subject to the same standards; (3) reported to the same supervisor; (4) had comparable education and experience; and (5) whether plaintiff had differentiating or mitigating circumstances that would distinguish the employer's treatment of them. See Spencer v. Va. State Univ., 919 F.3d 199, 207 (4th Cir. 2019); see also Cowgill v. First Data Techs., Inc., 41 F.4th 370, 381 (4th Cir. 2022).

Here, Obembe rests her disparate treatment claim solely on CareFirst's purported favorable treatment towards Balakrishna and Rejeti; but because the Court finds that they are not similarly situated to Obembe in all relevant respects, her claim must be dismissed. (See 2d Am. Compl. ¶¶ 69–70); Johnson, 163 F.4th at 818. First, Obembe concedes that Rejiti and Balakrishna are "vendor-affiliated contractors," whereas Obembe is a CareFirst employee. (Opp'n at 17). Despite Obembe's arguments to the contrary, this is a relevant distinction within the context of a claim for disparate treatment in work assignments See, e.g., Taylor v. ADS, Inc., 327 F.3d 579, 581 (7th Cir. 2003) ("[Plaintiff] must show that similarly situated non-black employees were treated more favorably than he was. But the only potential comparative plaintiffs point to, a white male [who] is not an employee; he

is an independent contractor."); <u>Barbour v. United Beechcraft</u>, No. 96 C 50251, 1998 WL 803417, at *6 (N.D.Ill. Nov. 10, 1998) (finding that independent contractor and plaintiff-employee "are simply not similarly situated and it is impossible to compare the two"). Further, Obembe alleges that Balakrishna "exercised authority over project staffing, work assignments, and performance evaluations," and had more experience than Obembe (given that she interviewed and tested her). (2d Am. Compl. ¶¶ 24, 41). Because, unlike Obembe, Rejiti and Balakrishna are both contractors, with Balakrishna exercising a supervisory role, the Court cannot infer that Obembe and her comparators were similarly situated in all relevant respects. Therefore, the Court finds the Complaint fails to state a claim of disparate treatment under Title VII, and will grant CareFirst's Motion to Dismiss Count I.

3.    **Count II**

In Count II, Obembe alleges that CareFirst subjected her to a hostile work environment by excluding her from meetings, revoking her access to technical work assignments, and making "racially coded directives." (2d Am. Compl. ¶¶ 14, 15, 61, 62, 103, 108). To state a claim for a hostile work environment under Title VII, a plaintiff must allege facts that permit the Court to infer the purported conduct was: (1) unwelcome; (2) based on a protected characteristic of the plaintiff; (3) sufficiently severe or pervasive to alter plaintiff's conditions of employment and create an abusive environment; and (4) imputable on some factual basis to the employer. <u>See</u> <u>Brown v. Perry</u>, 184 F.3d 388, 393 (4th Cir. 1999). CareFirst argues that Obembe fails to allege the second and third elements. (Mot. at 14–15). For reasons discussed more fully below, the Court agrees with CareFirst and will dismiss Count II.

13

To support her allegations that CareFirst subjected her to a hostile work environment because of her race or national origin, Obembe directs the Court's attention to an August 6, 2024 meeting, in which Director Santos and HR told Obembe that she was "too aggressive" and should "prove herself" like Balakrishna and "respect her seniors." (2d Am. Compl. ¶ 53). To the extent that these comments can be deemed race-based harassment, this Court cannot conclude that a single instance of "racially coded" comments is sufficiently severe or pervasive to alter the conditions of her employment. See, e.g., McKnight v. Nationwide Better Health Ins., No. CCB-12-801, 2014 WL 2435918, at *5 (D.Md. May 29, 2014) (finding that single instance of racially hostile language does not constitute evidence of pervasive harassment). Further, as noted above, Obembe's allegations regarding similarly situated non-Black/Nigerian employees fail to make her claim of racial animus plausible. At best, Obembe has alleged that she was treated differently than others, but she fails to allege sufficient facts to show that any unwelcome conduct was based on her race. And as to Obembe's claims of systemic exclusion from meetings and revocation of technical assignments, "courts have repeatedly held that such job-duty-related disparities and grievances are not the kind of severity" that this claim contemplates. Talent v. Comm'r of Pub. Works, No. 2:12-CV-0622 DCN, 2014 WL 971747, at *12 (D.S.C. Mar. 11, 2014); see, e.g., Fleming v. MaxMara USA, Inc., 371 F.App'x 115, 119 (2d Cir. 2010) (finding that excluding employee from meetings and criticizing employee's work did not support hostile work environment claim). Accordingly, the Court will grant CareFirst's Motion to Dismiss Count II.

14

4.      **Count III**

In Count III, Obembe alleges that CareFirst retaliated against her after she filed her MCCR Charge by removing her from high-value work assignments. (2d Am. Compl. ¶¶ 66–67, 113c). CareFirst argues that Obembe fails to state a claim for relief. (Mot. at 12–13). The Court disagrees and finds that Count III will survive the Motion to Dismiss.

It is a violation under Title VII for an employer to retaliate against an employee for opposing "conduct made unlawful by Title VII, or for participating in a Title VII investigation or proceeding." Angelini v. Balt. Police Dep't, 464 F.Supp.3d 756, 776 (D.Md. 2020). To state a claim of retaliation a plaintiff must generally allege sufficient facts that permit the court to infer that: (1) she engaged in a protected activity; (2) the defendant took an adverse action against her; and (3) a causal connection exists between the protected activity and the adverse action. See EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005). Here, there is no dispute that the filing of Obembe's MCCR Charge, in which she alleges that CareFirst discriminated against her because of her race and national origin, constitutes a protected activity. (See MCCR Charge at 5; Mot. at 13).[8]

---

[8] Obembe also alleges that she engaged in protected activity in January 2025 by requesting a reasonable accommodation under the ADA Amendments Act, "citing worsening psychiatric and cardiovascular symptoms." (2d Am. Compl. ¶ 72). To the extent that she experienced retaliation for this protected activity, such a claim falls under the ADA, and thus is not actionable under Title VII. See Wilson v. Montgomery Cnty. Bd. of Trs., No. PWG-17-2784, 2018 WL 4300498, at *7 (D.Md. Sep. 10, 2018) ("A request for an accommodation is a protected activity under the ADA."). As stated earlier, Obembe failed to exhaust her administrative remedies as to her ADA claims; thus, the Court declines to consider her ADA-related activity in its analysis.

15

As to the second element, the challenged conduct must be "materially adverse," or conduct that would dissuade a reasonable worker from engaging in protected activity. Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); Reeves v. Md. Dep't of Transp., Motor Vehicle Admin., No. BAH-23-2017, 2024 WL 3252975, at *6 (D.Md. July 1, 2024). Specifically, any conduct that "materially alters the terms, conditions, or benefits of employment" may constitute an adverse action. Bridgeforth v. Potter, No. 3:10-CV-00030, 2011 WL 3102422, at *13 (W.D.Va. July 25, 2011) (citing as examples, "whether the employee has suffered termination, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or decreased opportunities for promotion"). Decisions that have no immediate effect upon employment conditions, however, do not fall within the scope of Title VII. See Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc).

With respect to the third and final element, whether a causal connection exists, at the motion to dismiss stage, causation can be "inferred based on the temporal proximity between the protected activity and the materially adverse action, particularly when the materially adverse action occurs within two months after the protected activity." Timothy v. Kennedy, No. TDC-24-3313, 2025 WL 3017965, at *10 (D.Md. Oct. 28, 2025).

Here, the Court finds that Obembe adequately alleges the second and third elements of her retaliation claim. Obembe asserts that nineteen days after filing her MCCR Charge, her manager "formally removed her from the core 'V12 Deployment Group' email list, a public act that severed her from project workflow." (Opp'n at 22; 2d Am. Compl. ¶ 113c). According to Obembe, this action "led directly to [a] tangible loss in bonus compensation,

[and] deterrence from future promotion[s]." (Opp'n at 23; 2d Am. Compl. ¶ 117). Because Obembe alleges that CareFirst's conduct "materially altered" her employment, the Court finds that Obembe has adequately alleged an adverse action. (See 2d Am. Compl. ¶ 101). Further, at this stage of the litigation, causation may be inferred from the close temporal proximity (nineteen days) between the filing of Obembe's MCCR Charge and the removal from work projects. Accordingly, the Court finds that Obembe has successfully stated a claim for retaliation under Title VII, and will, therefore, deny CareFirst's Motion as to Count III.

### III. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part CareFirst's Motion to Dismiss (ECF No. 44). A separate Order follows.

Entered this 5th day of June, 2026.

_____/s/_____

George L. Russell, III
Chief United States District Judge
